IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

NATHANIEL GAINES                                    PLAINTIFF

V.                        CIVIL ACTION NO. 5:22-cv-00032-DCB-FKB

JEFFERSON COUNTY SCHOOL DISTRICT;
ADRIAN HAMMITTE; and SHAMEKA WOODS            DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 30] (the "Motion for Judgment"), which defendants Adrian Hammitte ("Hammitte") and Shameka Woods ("Woods"; collectively with Hammitte, the "Individual Defendants") filed against plaintiff Nathaniel Gaines ("Plaintiff"). The Individual Defendants also filed a Memorandum of Authorities in Support thereof. [ECF No. 31]. Discovery is stayed pending a decision on the Motion for Judgment. <u>See</u> text-only order issued 9/25/2023. Plaintiff opposed the Motion for Judgment, [ECF Nos. 32 & 33], and the Individual Defendants filed their reply. [ECF No. 34].

This is the second motion for judgment that the Individual Defendants have filed. [ECF Nos. 12 & 13]. The Court denied the initial motion without prejudice and gave Plaintiff the

opportunity to file a Rule 7(a)(7) <u>Schultea</u> reply. [ECF No. 25]. Plaintiff took advantage of that opportunity, [ECF No. 26], and the Individual Defendants responded in opposition. [ECF No. 29].

Having provided the parties with multiple opportunities to present their positions and having carefully reviewed the pleadings, all submissions of the parties, and the applicable law, the Court finds as follows:

<u>**BACKGROUND**</u>[1]

Following his termination as a Jefferson County Elementary School employee, Plaintiff brought this action under Title VII and 42 U.S.C. § 1983 for sex discrimination and retaliation (Counts I & II), First Amendment retaliation (Count III), and breach of contract (Count IV). Plaintiff sued the Individual Defendants solely for First Amendment retaliation in Count III. Hammitte is sued in both his individual and official capacities; Woods is sued only in her individual capacity. [ECF No. 1] ¶¶ 6 & 8.

Prior to his termination, Plaintiff worked as a non-certified interventionist at Jefferson County Elementary School. Plaintiff attained his teaching certification during his

---

[1] The Court presented in detail the background of this case in its prior opinion, which was issued on June 20, 2023. [ECF No. 25].

2

employment at Jefferson County Elementary and applied for over a
dozen certified teaching positions.  He was not hired for any of
those positions.  [ECF No. 1] ¶¶ 20-23; 34-35.  The school's
athletic director offered Plaintiff a coaching position, which
Plaintiff did not accept.

After having been turned down for multiple certified
teaching positions, Plaintiff posted the following comment on
Facebook:

> I'm going to say what's on alot of people I know
> minds. We tired of being underpaid & unappreciated.
> This some pure [f******] on so many levels.  Ion care
> who don't like my hometown full of [excrement emoji].
> Then act dumb to the fact like they don't know the
> bull[****] they doing to some hardworking people I
> swear we deserve better than this.

[ECF No. 1-3] (redacted; see Exhibit 2 to Complaint for
unredacted version).  His post generated three responses on
Facebook from a person who commented on the school
administrators' misallocation of COVID relief funds and air
purifiers that did not make it to the classrooms.  [ECF No. 19-
1,-2,-3].  Four days after Plaintiff posted on Facebook, Woods
recommended to Hammitte that Plaintiff should be fired.  [ECF
No. 1] ¶ 54; [ECF No. 1-4].  Two days later, Hammitte notified
Plaintiff by letter that he was terminated.  [ECF No. 1] ¶ 56;
[ECF No. 1-5].

According to the Complaint, Plaintiff called Hammitte
regarding his termination, and the superintendent told Plaintiff

3

he was fired for not executing a coaching contract that had been offered to him, for violating the school's cell phone policy, and for his Facebook post. [ECF No. 1] ¶¶ 60-68.  Plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission. [ECF No. 1] ¶ 14.  In its Position Statement in response to Plaintiff's EEOC charge, the Jefferson County School District (the "District") denied having discriminated against Plaintiff based on sex or retaliation and stated: "Mr. Gaines went on social talking negatively about the school district, which caused a distraction and disruption to the district's learning environment."  [ECF No. 19-4].  The EEOC issued a Right to Sue letter [ECF No. 1-2], and Plaintiff affirms that he filed this lawsuit within ninety (90) days of his receipt of the EEOC letter.  [ECF No. 1] ¶ 17.

In his Complaint, Plaintiff alleges that his Facebook post "expressed his belief that Jefferson County was treating its employees poorly" and that he "was speaking as a private citizen on a matter of public concern."  [ECF No. 1] ¶¶ 51-52.  The Individual Defendants counter that: "Since the Plaintiff's post conveys no information beyond the Plaintiff's displeasure with his pay and the lack of appreciation shown to him, the Plaintiff's post amounts only to an airing of his personal opinions, nothing more."  [ECF No. 34] at 10.

**STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure governs a motion for judgment on the pleadings.  The standard for addressing a Rule 12(c) motion is the same as that for addressing a motion to dismiss under Rule 12(b)(6).  In re Great Lakes Dredge & Co., 624 F.3d 201, 209–10 (5th Cir. 2010); Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Great Lakes Dredge, 624 F.3d at 210 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The factual allegations in a complaint must be enough to raise the right to relief above the speculative level.  E.g., Twombly, 550 U.S. at 555; Great Lakes Dredge, 624 F.3d at 210.  The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff."  Great Lakes Dredge, 624 F.3d at 210.

## ANALYSIS

### Qualified Immunity

At issue in this Rule 12(c) motion is whether the Individual Defendants are entitled to qualified immunity and to have the claims against them in their individual capacities in Count III dismissed.  The Individual Defendants generally would be shielded from suit when performing discretionary functions, unless Plaintiff shows by specific allegations that they violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).  It is Plaintiff's burden to show through nonconclusory factual averments that the qualified immunity defense does not apply.  Williams v. City of Jackson, No. 3:20-CV-785-DPJ-FKB, 2021 WL 4485865, at *4 (S.D. Miss. Sept. 29, 2021) (relying on Khan v. Normand, 683 F.3d 192, 194 (5th Cir. 2012)).

A two-pronged test determines whether defendants are entitled to qualified immunity:

(1) Did the plaintiff allege the violation of a
constitutional right?

(2) Was the conduct objectively reasonable in
light of clearly established law at the time the
challenged conduct occurred?

Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part

by Pearson v. Callahan, 555 U.S. 223, 236 (2009).  "If no

constitutional right would have been violated were the

allegations established, there is no necessity for further

inquiries concerning qualified immunity."  Saucier, 533 U.S. at

201.

In Pearson v. Callahan, the Supreme Court reconsidered

Saucier's mandated sequence of applying the two prongs in the

qualified immunity analysis and held that district courts and

the courts of appeals may exercise their sound discretion in

deciding which of the two prongs should be addressed first.

Pearson, 555 U.S. at 236.  The Court explained:

> On reconsidering the procedure required in *Saucier,* we
> conclude that, while the sequence set forth there is
> often appropriate, it should no longer be regarded as
> mandatory. The judges of the district courts and the
> courts of appeals should be permitted to exercise
> their sound discretion in deciding which of the two
> prongs of the qualified immunity analysis should be
> addressed first in light of the circumstances in the
> particular case at hand.

Id.

Based on a review of the facts alleged in this case, and

further based on the status of controlling case law at the time

that the challenged conduct occurred, the Court will render its
ruling on this motion under the second prong of the Saucier
test. See Morgan v. Swanson, 659 F.3d 359, 384-85 (5th
Cir.2011) (discussing the Supreme Court's ongoing retreat from
Saucier's mandatory order of battle and active discouragement of
district courts from "unnecessarily deciding the merits of a
constitutional issue"). So as to render a thorough decision,
the Court will initially discuss below the factual allegations
as applied to clearly established First Amendment retaliation
law at the time that Plaintiff's employment was terminated.

## A.  First Amendment Retaliation

Plaintiff claims that the constitutional right at issue is
his First Amendment right to speak "as a private citizen on a
matter of public concern." [ECF No. 1] ¶ 84. It is well-
established that a cognizable employee free speech retaliation
claim must satisfy four elements:

(1) the employee suffered an adverse employment action;

(2) the speech involved a matter of public concern;[2]

(3) the interest in commenting on matters of public concern
    outweigh the employer's interest in promoting
    efficiency; and

---

[2] As explained in Dixon v. Alcorn Cnty., Mississippi, No. 1:19-
CV-167-SA-DAS, 2020 WL 5765202, at *5 (N.D. Miss. Sept. 28,
2020), the second element has been modified by courts to include
the requirement that the speech was delivered by a private
citizen on a matter of public concern.

480 F.3d 689, 694 (5th Cir. 2007) (athletic director's memoranda
to the office manager and principal were written in the course
of performing his job and therefore not protected by the First
Amendment); Teague v. City of Flower Mound, Tex., 179 F.3d 377,
382 (5th Cir. 1999)("citizen versus employee" test must be
considered in conjunction with the more lengthy three-factor
balancing test of content, context, and form).  In his Schultea
reply, [ECF No. 26] ¶¶ 1-3, Plaintiff informed the Court that
his speech was posted directly to the public on his own time and
device and was made "outside the chain of command."  The Court
is satisfied under existing law that Plaintiff did not make his
Facebook post as part of his official duties.

The inquiry is not over because Plaintiff also must
demonstrate that he was speaking on a matter of public concern.
Connick v. Myers, 461 U.S. 138, 147 (1983) (when a public
employee speaks upon matters only of personal interest, absent
the most unusual circumstances, a federal court is not the
appropriate forum in which to review the wisdom of a personnel
decision taken by a public agency); Dixon v. Alcorn Cnty.,
Mississippi, No. 1:19-CV-167-SA-DAS, 2020 WL 5765202, at *5
(N.D. Miss. Sept. 28, 2020) (to defeat a qualified immunity
defense, the plaintiff must plead sufficient facts to show that,
in addition to speaking as a private citizen, the plaintiff also

was speaking on a matter of public concern).  The United States
Supreme Court has offered this guidance:

> Speech involves matters of public concern "when it can
> 'be fairly considered as relating to any matter of
> political, social, or other concern to the community,'
> or when it 'is a subject of legitimate news interest;
> that is, a subject of general interest and of value
> and concern to the public.'" *Snyder v. Phelps,* 562
> U.S. ----, ----, 131 S.Ct. 1207, 1216, 179 L.Ed.2d 172
> (2011) (citation omitted).

Lane v. Franks, 573 U.S. 228, 241 (2014).  "The arguably
'inappropriate or controversial character of a statement is
irrelevant to the question whether it deals with a matter of
public concern.'"  Snyder v. Phelps, 562 U.S. 443, 453, (2011)
(quoting Rankin v. McPherson, 483 U.S. 378, 387 (1987)); accord
United States v. Cook, 472 F. Supp. 3d 326, 335 (N.D. Miss.
2020).

The Individual Defendants claim to have viewed Plaintiff's
Facebook post as "merely a private concern reflecting personal
interest, aired publicly," [ECF No. 31] at 4, which conveyed "no
information beyond the Plaintiff's displeasure with his pay and
the lack of appreciation shown to him ... ."  Id. at 6; see also
[ECF No. 34] at 10.  The gist of their defense is that
Plaintiff's post reflects a personal employer-employee dispute
and is not a matter of public concern that merits First
Amendment protection.  Salge v. Edna Indep. Sch. Dist., 411 F.3d
178, 187 (5th Cir. 2005).

Plaintiff claims that his Facebook post "expressed his
belief that the employees of Jefferson County were being 'under
paid & unappreciated'" and that "Jefferson County was treating
its employees poorly." [ECF No. 1] ¶¶ 50-51. Plaintiff argues
that he was voicing a "collective grievance" about budget and
education policy, dishonesty, mismanagement of funds, improper
Board policies, and underpayment of teachers - all topics of
protected speech under Supreme Court and Fifth Circuit
precedent. [ECF No. 33] at 12-14; see, e.g., Pickering v. Bd.
of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Illinois, 391
U.S. 563, 571-73 (1968). The true nature of Plaintiff's speech
no doubt lies somewhere in between the parties' diametrically
opposed positions.

Our controlling precedent contains many examples of "mixed
speech" cases in which "[a]n employee's speech may contain an
element of personal interest and yet still qualify as speech on
a matter of public concern." Harris v. Victoria Ind. Sch.
Dist., 168 F.3d 216, 222 (5th Cir. 1999). In mixed speech
cases, "Whether an employee's speech addresses a matter of
public concern must be determined by the content, form, and
context of a given statement, as revealed by the whole record."
Connick v. Myers, 461 U.S. 138, 147-48 (1983); Teague v. City of
Flower Mound, Tex., 179 F.3d 377, 382 (5th Cir. 1999) ("In cases
involving mixed speech, we are bound to consider the *Connick*

factors of content, context, and form, and determine whether the speech is public or private based on these factors."). Under Fifth Circuit precedent, none of these three factors is dispositive, <u>Bell v. Itawamba Cty. Sch. Bd.</u>, 799 F.3d 379, 407 (5th Cir. 2015), but context and form are to be weighed more heavily than content. <u>Gibson v. Kilpatrick</u>, 838 F.3d 476, 487 (5th Cir. 2016) ("Within this balancing, we weigh context and form 'more heavily.'"); <u>Teague</u>, 179 F.3d at 383.

**i. <u>Content</u>.**

Applying these principles to Plaintiff's Facebook post, the Court finds itself at a disadvantage when it comes to construing the content of Plaintiff's speech. This is so because the writing is unclear, as Plaintiff admits in part. [ECF No. 33] at 13. What is clear from the post is that Plaintiff wishes to speak for a group of people (<u>e.g.</u>, "I'm going to say what's on alot of people I know minds") and not just for himself. His post makes no reference to his personal employment dispute with the Jefferson County School District. Fifth Circuit precedent instructs that '"if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature."' <u>Salge</u>, 411 F.3d at 187 (5th Cir. 2005) (quoting <u>Kennedy v. Tangipahoa Par. Library Bd. of Control</u>, 224 F.3d 359,

372 (5th Cir.2000), abrogated on other grounds as explained in
Cuvillier v. Taylor, 503 F.3d 397, 401 n.4 (5th Cir. 2007).

While Plaintiff's Facebook post - as written – might not
appear particularly informative to the populace, it does seem to
have sparked informative comments on topics of public concern
from some members of the community.  In his Schultea reply,
Plaintiff alleges that "[t]en members of the local community –
members of the public – reacted to the post to express their
interest in it and their support of Gaines' views."  [ECF No.
26] ¶ 22.  One of these community members, who was not employed
by the Jefferson County School District, shared Plaintiff's post
"as part of her allegations that JCPS was poorly allocating
public ESSER [Elementary and Secondary School Emergency Relief]
funds provided in Biden's American Rescue Plan, including the
specific allegation that JCPS administrators paid themselves
bonuses from funds earmarked to combat the COVID-19 pandemic,
and that they should have spent more on air purifiers for the
classrooms and bonuses for the teachers."  Id. ¶¶ 30, 35.

Relying on two United States Supreme Court cases and a
Fifth Circuit decision,[3] Plaintiff argues that "what matters is

---

[3] Heffernan v. City of Paterson, N.J., 578 U.S. 266, 270 (2016);
Waters v. Churchill, 511 U.S. 661, 677-78 (1994); Salge, 411
F.3d at 185.

*not* what Plaintiff said, but how he was understood by his audience … ."  [ECF No. 33] at 10 (emphasis added and in the original).  The Court finds this interpretation of our precedent to be overly broad.  As explained by the Fifth Circuit in Salge, the Churchill decision held that "when a plaintiff-employee's First Amendment retaliation claim rests on a disputed version of his speech, a court applying the Supreme Court's *Connick v. Myers* test to determine whether the speech was on a matter of public concern must examine the speech as the defendant-employer reasonably believed it to be."  Salge, 411 F.3d at 185. Likewise, in Heffernan, the Supreme Court considered the consequences of an employer's mistaken belief that an employee had engaged in protected speech and concluded that the government employer's reason for demoting the plaintiff is what counted.  Heffernan, 578 U.S. at 272-73.  The Court does not find these cases to be helpful to Plaintiff's position.  If the Court were to determine whether Plaintiff's speech was a matter of public concern by examining it as the defendant-employer reasonably believed it to be, then the Court would most likely find Plaintiff's speech to reflect a personal employer-employee dispute, which, under our caselaw, would not be deemed a matter of public concern protected by the First Amendment.  In any event, the Court finds the cited cases to be factually distinguishable from Plaintiff's case and none holds that a non-

employer's response to, or interpretation of, an employee's ambiguous speech determines the public nature of such speech for the purposes of the <u>Connick</u> test.  No party has cited such a case to the Court in its briefing, and the Court's research has not uncovered such precedent.  The Court views the evaluation of the content of Plaintiff's ambiguous speech under <u>Connick</u> to be an open question that remains subject to debate.

**ii. <u>Form</u>.**

The second factor – the form of Plaintiff's speech – is less problematic and weighs in favor of a finding that Plaintiff spoke on a matter of public concern, as the Individual Defendants concede in their briefs.  [ECF No. 29] at 6; [ECF No. 31] at 6.  Plaintiff asserts that his post was made to the public and was available to anyone with an internet connection. [ECF No. 26] ¶¶ 8, 10.  The Fifth Circuit has found that a Facebook page was a form of speech accessible by the community, served as a community bulletin board, and weighed in favor of finding that the plaintiff spoke on a matter of public concern. <u>Graziosi v. City of Greenville Miss.</u>, 775 F.3d 731, 739 (5th Cir. 2015).  While the form of speech is not a dispositive factor in the Court's analysis, it is weighed more heavily than the content of the speech.  <u>E.g.</u>, <u>Gibson</u>, 838 F.3d at 487.

### iii. **Context**.

The final factor, which is the context of Plaintiff's speech, likely weighs at least narrowly in favor of a finding that Plaintiff spoke on a matter of public concern. The Individual Defendants are of a different view and argue that Plaintiff has failed to allege any widespread public debate regarding District employee pay or the District's hiring decisions. [ECF No. 31] at 7. In opposition, Plaintiff presented in his Schultea reply new factual allegations regarding the persons in the community who responded to or shared Plaintiff's post with others. [ECF No. 26] ¶¶ 22-26, 30-35. Plaintiff also cites three specific news articles regarding ESSER funding and American Rescue Plan spending. Id. ¶¶ 38-40. "'[S]peech made against the backdrop of ongoing commentary and debate in the press involves the public concern.'" Wetherbe v. Texas Tech Univ. Sys., 699 F. App'x 297, 301 (5th Cir. 2017), quoting Kennedy, 224 F.3d at 373 (5th Cir. 2000).

The Individual Defendants take issue with the publication dates of the cited articles because two postdate Plaintiff's Facebook post and one predates the post by five months. [ECF No. 31] at 8. The Individual Defendants further criticize the content of the earliest written article because it relays

general information that they claim does not create "a backdrop
of ongoing debate."

Recognizing that both sides have made perceptive points,
the Court believes that Plaintiff has alleged enough supporting
facts at this early stage of the litigation to tip the balance
in his favor on the issue of context.  Considering that the
factors of form and context seem to favor Plaintiff, and
provided that those two factors are afforded the greatest weight
in the legal analysis, e.g., Gibson, 838 F.3d at 487, then there
is an argument, subject to the Court's reservations explained
above, that Plaintiff's factual allegations are sufficient to
satisfy the second element of a First Amendment retaliation
claim.

   3.   **Balancing**.

The Individual Defendants argue that, even if Plaintiff
satisfies the first two elements of a First Amendment
retaliation claim, he fails to satisfy the Pickering balancing
test in the third element.  [ECF No. 13] at 13-14; see
Pickering, 391 U.S. at 568.  In Pickering, the United States
Supreme Court described a need to strike "a balance between the
interests of the teacher, as a citizen, in commenting upon
matters of public concern and the interest of the State, as an
employer, in promoting the efficiency of the public services it
performs through its employees."  Id.; see also Connick, 461

18

U.S. at 138.   The Individual Defendants urge the Court to find that the District's interest in promoting efficiency outweighs Plaintiff's interest in commenting on matters of public concern. The Court, however, must decline to do so.   The Fifth Circuit has held that the balancing analysis, while appropriate on summary judgment, is not appropriate at this stage of the litigation.   Cox v. Kaelin, 577 F. App'x 306, 313 (5th Cir. 2014), relying on Kennedy, 224 F.3d at 366 n. 9.   The balancing element must remain unresolved for now.

### 4.   **Causation**.

The parties present antithetical positions regarding the final element of the First Amendment retaliation claim -- whether Plaintiff's speech was a substantial or motivating factor in the adverse employment action.   As evidence that he was fired because of his Facebook post, Plaintiff emphasizes the timing of his firing, which was within days of his posting of the Facebook comment.   [ECF No. 33] at 3.   Plaintiff further alleges that Hammitte told him that he was fired for, among other things, his Facebook post. [ECF No. 1] ¶¶ 60-68.   Finally, Plaintiff points to the District's Position Statement in the EEOC proceedings in which the District stated: "Mr. Gaines went on social talking negatively about the school district, which caused a distraction and disruption to the district's learning

environment." [ECF No. 19-4]. Viewed in the light most
favorable to Plaintiff, these factual allegations are sufficient
to satisfy the First Amendment retaliation causation element on
a Rule 12(c) motion to dismiss.[4]

## B.  Objectively Reasonable Conduct

Returning to the second prong of the qualified immunity
test, the Court must decide whether the Individual Defendants'
conduct was objectively reasonable in light of clearly
established law at the time that Plaintiff's employment was
terminated. Saucier, 533 U.S. at 201. A constitutional right

---

[4] The Individual Defendants further argue under the Mount Healthy
decision that Plaintiff would have been fired whether or not his
Facebook post was protected speech. [ECF No. 31] at 11; see Mt.
Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287
(1977) (after plaintiff carries his burden of establishing that
the protected conduct was a substantial or motivating factor in
the adverse employment action, employer may show by a
preponderance of the evidence that it would have reached the
same adverse decision even in the absence of the protected
conduct). Typically, it is for a jury to resolve any remaining
factual disputes regarding causation and an employer's Mount
Healthy affirmative defense. Branton v. City of Dallas, 272
F.3d 730, 739 (5th Cir. 2001); Brown v. Leflore Cnty.,
Mississippi, 150 F. Supp. 3d 753, 760–61 (N.D. Miss. 2015) (last
element of First Amendment retaliation claim analysis and the
Mount Healthy affirmative defense are typically questions for
the jury); Smith v. Coll. of the Mainland, 63 F. Supp. 3d 712,
716 (S.D. Tex. 2014) (the final element – whether plaintiff's
protected speech was a substantial or motivating factor in the
adverse employment decision - is typically a jury question). It
is the Court's view that consideration of the Mount Healthy
defense and factual disputes regarding causation would be more
appropriately addressed later in this litigation.

is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5-6, (2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11, (2015) (internal quotation marks omitted). "Rights are 'clearly established' when 'existing precedent squarely governs the specific facts at issue,' … *not* when a rule is merely 'suggested by then-existing precedent'… ." Henderson v. Harris Cnty., Texas, 51 F.4th 125, 132 (5th Cir. 2022), cert. denied sub nom. Henderson v. Harris Cnty., 143 S. Ct. 2661 (2023) (internal citations omitted). A case directly on point is not required for a right to be clearly established, but "existing precedent must have placed the … constitutional question beyond debate." White v. Pauly, 580 U.S. 73, 78-79, (2017) (internal quotation marks omitted). Whether Plaintiff's ambiguous speech was of public concern is not beyond debate.

The Court finds that there is an absence of case law which addresses Plaintiff's theory of protected public speech. As the Court appreciates it, Plaintiff's theory is that his own words – no matter how vague - do not determine whether his speech is a matter of public concern protected by the First Amendment; rather, it is how non-employer "audience" members understood his speech that determines First Amendment protection. [ECF No. 33]

at 10.  The Court is of the opinion that this theory of First
Amendment law is not now, and was not when Plaintiff's
employment was terminated, clearly established.  The Individual
Defendants could not have been expected to conclude that
Plaintiff's Facebook post was constitutionally protected public
speech.  The Court finds that the Individual Defendants' conduct
was objectively reasonable given clearly established law at the
relevant time and that the Individual Defendants are entitled to
qualified immunity with respect to the Count III First Amendment
retaliation claims against them in their individual capacities.
See Keim v. City of El Paso, 162 F.3d 1159 (5th Cir. 1998) (the
individual defense of qualified immunity does not apply to an
official-capacity claim); Hunter v. Town of Edwards, 871 F.
Supp. 2d 558, 562 (S.D. Miss. 2012) (the defense of qualified
immunity only applies to claims alleged against officials in
their individual, but not their official, capacities).

    Accordingly,

    IT IS ORDERED THAT the Motion for Judgment on the Pleadings
Based on Qualified Immunity [ECF No. 30] is **GRANTED** to the
extent expressly set forth in this order;

     IT IS FURTHER ORDERED THAT the claims asserted in Count III
of the Complaint against the Individual Defendants in their
individual capacities are dismissed; and

IT IS FURTHER ORDERED THAT the stay on discovery in this
case is lifted.

SO ORDERED, this the 7th day of December 2023.

                                    /s/  David Bramlette
                              UNITED STATES DISTRICT JUDGE